Fletcher Smith, Appellee, v. The Bankers Life Association, Appellant.

### Gen. No. 15,381.

INSURANCE—*when false representations vitiate policy.* An answer by an applicant for insurance to the effect that he was at the time in good health is vital and whether intentionally false or simply erroneous is of no importance; the answer if untrue will vitiate the policy.

Assumpsit. Appeal from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding. Heard in this court at the March term, 1909. Reversed. Opinion filed October 20, 1910. Rehearing denied November 3, 1910.

I. M. EARLE and O. S. BAYLIES, for appellant.

PHELPS & PHELPS, for appellee.

MR. JUSTICE HOLDOM delivered the opinion of the court.

This case is before this court, on appeal, for the second time. The decision of the former appeal is reported in the 123 Ill. App. 392. A sufficient statement of the case for the present review is embodied in that opinion, and the legal phases of the case as here presented are also there stated in an opinion by Mr. Justice Freeman. We refer to and adopt the statement there made as meeting every requirement of this review, without here repeating it, and so far as the opinion there written is applicable, we treat it as the law of the case.

There are numerous assignments of error upon the record and many reasons are urged in somewhat elaborate arguments by counsel for the respective contestants, on the one hand why the judgment should be reversed, and on the other hand why it should be affirmed. We have diligently read and carefully considered all the arguments of counsel as well as the record in the cause, and have reached the conclusion therefrom that the questions of fact and law involved in instructions numbered 49 and 50, given at the instance of the defendant, are, exclusive of all other points in the case, decisive of the rights of the parties in the subject-matter of this litigation, and we shall therefore confine our opinion to the questions thus presented. These instructions are:

49. "If you find from the evidence that at the time said James Grant Black made application for membership in the defendant Association that he did not usually enjoy good health, then your verdict should be for the defendant."

50. "You are instructed, that if from the evidence you find that the said James Grant Black at the time his application for membership in the defendant Association was made was not in good health, then your verdict should be for defendant."

The correctness of the proposition embodied in these instructions is at least impliedly conceded by plaintiff from the fact that they were given without objection on his part.

Whether the answer of Black that he was in good health at the time of his application for membership in defendant Association was a representation or a warranty, is of no mo-

ment. Such answer was not only material but vital to the making of the contract of insurance, and therefore whether the answer was intentionally false or simply erroneous is of no importance. If untrue in fact, it vitiates and voids the certificate issued in faith of its verity. National Union v. Arnhorst, 74 Ill. App. 482, was a case in which a bill was filed to cancel an insurance policy because of the failure of the insured in his application to fairly answer questions in relation to his health. The bill was dismissed by the chancellor for want of equity, but this court reversed the chancellor's action and directed a decree to be entered according to the prayer of the bill. While this court held in the Arnhorst case that the answers as to applicant's condition of health amounted to warranties, yet it is said: "If the whole contract of insurance, including the application, medical examiner's report and benefit certificate, when construed together, do not make the answers to these questions warranties, but simply representations, still they are certainly material to the risk, and must be substantially true in order to make the Association liable. 1 Bacon on Ben. Societies, Sec. 212, 230 a.; Morgan case *supra* (32 ib. 81); Cummins case *supra* (53 ib. 537); Continental Life Ins. Co. v. Rogers, 119 Ill. 474; Cobb v. Covenant M. B. Assn., 153 Mass. 176; Metropolitan Life Ins. Co. v. McTague, 49 N. J. Law, 587." The principle is also well and concisely stated in U. S. Fidelity Co. v. First Nat'l Bk., 233 Ill. 475, in these words: "The law is well settled, in its application to insurance contracts, that a misrepresentation of a material fact, in reliance upon which a contract of insurance is issued, will avoid the contract. A material misrepresentation, whether made intentionally, knowingly, or through mistake and in good faith, will avoid the policy."

The affirmative answers of Black to the questions, "Are you now in good health?" and "Do you usually enjoy good health?" were untrue. They were material to the contract of insurance; being untrue, the insurance contract is vitiated and the certificates sued upon cannot be enforced.

The evidence that the representations of Black, concerning

his condition of health, were false is monumental, and in no way are the facts constituting such evidence in dispute. His own mother testified that periodically for twelve years Black had trouble with his stomach and bowels; that during that time he had a great many attacks, which increased in virulence and frequency as time progressed. He told his mother he was not well and she testified that he vomited and had constipation of the bowels; that he said he was never real well and added, "Mother, when I eat anything it seems to stop right in the middle of my bowels and I either have to vomit or take a physic to pass through my bowels." This testimony was supported by the testimony of about nine medical men who had attended Black professionally at varying times during that period. Dr. Kampen testified that he knew Black ten years before he died and after his death made an autopsy of his remains. He treated him in June, 1899, and found him suffering from reflex vomiting, that he had severe cramping pains in stomach and bowels and that these troubles continued for one week, and that there were recurrences of these troubles in August and September following. The severity of the difficulties may be somewhat judged from the character of the remedies given. They were castor oil, salts and morphine; the latter of course being given to alleviate the severe pains. These were so acute that Black was able to and did take one and a half grains of morphine daily. The *post mortem* disclosed that Black had a stricture of the ilium near the juncture of that organ and the coelum and about six inches in length, running parallel with the bowels. Four inches above that stricture was another, one and a half inches in length, running around the bowels. Eighteen inches above the latter was still another stricture, and a fourth one above that similar to the second stricture. These strictures were hard siccaturial bands which produced impaction of the bowels by interference with the passing of food matter. This condition, in the opinion of this witness, antedated the time when he first treated him. While this testimony touching the condition which the *post mortem* disclosed was excluded, it is our opinion that it should have been admitted. Other

medical men who attended Black testified that he had severe attacks of cramps and suffered greatly, at times rolling out of bed onto the floor in agony; that they gave him morphine both internally and hyperdemically.

Black made his application for the insurance certificates in suit September 26, 1899. He died June 18, 1900. On September 18, 1898, on the advice of a physician, he went to the Post Graduate Hospital at Chicago to consult some of the medical faculty and have a diagnosis made in an effort to discover if possible the exact nature of his physical ailments. He continued at the hospital four days, leaving September 22, 1898. During his sojourn in the hospital his stomach was pumped out and he was otherwise examined by some of the doctors. He became dissatisfied with the delay of the medical men in arriving at a satisfactory conclusion as to his physical troubles and for that reason departed. The following tabulated statement shows the dates when Black was medically treated during the years 1898 and 1899, prior to signing his application, the names of the medical men attending him, the symptoms and diagnosis of his physical ills, and some of the medicines prescribed:

Smith v. The Bankers Life Asso., 157 Ill. App. 236.

| Names Doctors. | Date Attendance. | Symptoms & Diagnosis. | Medicines. |
|---|---|---|---|
| Dr. Webster. | 1898 September. May 31, 1899. | Inflammation Stomach & Bowels. | Morphine. Chloroform. |
| Dr. Kilgore. | 1898 May & Sept. | Inflammation Stomach & Bowels. | Chloroform. Laudanum. |
| Dr. Ebersole. | September. | Inflammation Stomach & Bowels. Told Black Stricture. | Morphine. |
| Dr. Wallace. | May. | Excruciating pains abdominal regions—gallstones or gastralgia. | Morphine. Nitro-glycerine. |
| Dr. Patton. | September. | Cramps in stomach, suffered dreadfully; gall stones; stricture; delirious; unconscious; told Black to go to hospital. | Morphine. |
| Dr. Webster. | 1899 May. | Inflammation of stomach & bowels. | Morphine & Chloroform. |
| Dr. Kimmel. | May. | Excruciating pain stomach and bowels. | Morphine. |
| Dr. Sherrick. | May. | Pains stomach; gastralgia, gall stones. | |
| Dr. Allen. | July. | Neuralgia of stomach; treated Black from July 19 to 25, 3 or 4 times day; kept under influence of morphine. | Morphine. Bismuth. Calomel. |
| Dr. Kampen. | June; July; Aug.; Sept. to Sept. 11. | Stricture of ileum; so ascertained at autopsy. | Castor oil, Salts, Morphine. |
| Dr. Peterson at hospital. | Sept. 18 to 22. | Obscure case; Black left before could diagnose; pumped out stomach. | |
| Application. | September 26. | | |
| Dr. Kempen. Dr. Kempen. | December, 1900. Feby.; April | | |
| Back to hospital. | April 24. | Same trouble; while there took pneumonia and died June 18, thereafter. | |

It is undeniable that the answers of Black in his application for membership in defendant Association that he was in good health and usually enjoyed good health were misrepresentations and untrue; that these answers being false vitiated the contracts of insurance, and that no recovery can be had on either of the certificates in suit. The verdict of the jury is contrary to the undisputed evidence and contrary to the two instructions recited in the introductory part of this

opinion. As Black was not in good health September 26, 1899, when he made his application for the certificates in suit, in which application he represented to the contrary, there can be no recovery in this action, regardless of every other question raised in the case.

The judgment of the Circuit Court is therefore reversed.

*Reversed.*