## Mary Davis, Appellee, v. Catholic Order of Foresters, Appellant.

### Gen. No. 15,989.

FRATERNAL BENEFIT SOCIETIES—*effect of false answers in application.* False answers as to health conditions and history if material, regardless of whether they constitute warranties, are a good defense to an action upon a certificate.

Appeal from the Municipal Court of Chicago; the Hon. FREDERICK L. FAKE, Judge, presiding. Heard in this court at the October term, 1909. Reversed with finding of fact. Opinion filed October 20, 1911.

EDWARD S. CUMMINGS, for appellant.

JOHN T. RICHARDS, for appellee.

MR. JUSTICE CLARK delivered the opinion of the court. This is an appeal from a judgment entered in a suit in the Municipal Court of Chicago, the suit being of the first class. The suit is based upon a benefit certificate issued by the appellant to Charles Davis, the appellee, his mother, being named in the certificate as beneficiary. There was a verdict of the jury finding the issues for the appellee, the plaintiff below, for the sum of $1,075, being the amount specified in the benefit certificate with interest thereon.

As is usual in such cases, the applicant for membership in the appellant society was required to sign an application. In the present instance the application was made a part of the certificate or contract by the following provision:

"The representations and agreements made and subscribed by him in the application and medical examiner's blanks and the answers given and certified by him to the medical examiner are hereby acknowledged and declared by him to be warranties and to be made a part of this contract."

The certificate also contains the following acceptance signed by the applicant:

"I accept this certificate upon the conditions hereinabove named and assent thereto and agree to comply therewith."

Among the questions of the Medical Examiner and answers of the insured as shown in the application were the following:

"Have you ever had any severe illness or injury or undergone any surgical operation? A. No.

"When, and for what has medical advice been sought within the last three years? A. I had none.

"Have you had any of the following complaints, diseases or symptoms: Abscess of the hip? A. No.

"Have you had any of the following complaints, diseases or symptoms: Open sores? A. No.

"Is there anything to your knowledge or belief in physical condition, family or personal history, or habits tending to shorten your life which is not directly set forth in this application? A. No."

The appellant filed several pleas, to which a demurrer was interposed by appellee. This demurrer was sustained, and one of the points urged upon us for a reversal of the judgment is the alleged error of the court in sustaining this demurrer. It is unnecessary for us to discuss the questions presented by the demurrer, for the reason that we think the case must be disposed of on other grounds.

The appellant filed six pleas in addition to the general issue and in addition to those to which the demurrer was interposed. To the six pleas a replication was filed by appellee. These pleas in appropriate language set forth the defenses relied upon by the appellant based upon its claim that the answers to the five questions contained in the application, and which have been set forth above, were false and untrue, and that when he signed the application the said Charles Davis was not in good health but was afflicted with a disease which would tend to shorten his life; that he knew that he was so afflicted, and that the defendant did not

know that he was in ill health, etc. The pleas also recite the following portion of the certificate signed by Charles Davis:

"I do hereby certify and declare that the statements by me made above are each and all true in fact, and I do hereby warrant said statements and each one of them to be true in fact, and I do hereby agree that should any statement so made by me be untrue in fact or should I be suspended or expelled from the order or voluntarily sever my connection with the order, or should any concealment of facts be made by me in this application, that then and in such case I do thereby forfeit the rights of myself and of my beneficiary or beneficiaries, and of any and all other persons whomsoever to any and all benefits and privileges of the order, including all claims and demands by virtue of any benefit certificate that may have been issued to me by said order, and including also all moneys paid by me to said order for any purpose whatsoever."

It is asserted by appellant that the allegations of these pleas were proven at the trial below and that such proof constituted a complete defense.

It is also asserted by appellant that the contract is a contract of warranty, and that because the answers to the questions were not truthfully made the contract is void. A representation, as distinguished from a warranty, has been defined to be, "a verbal or written statement, made by the assured to the underwriter before the subscription of the policy, as to the existence of some fact or state of facts tending to induce the underwriter more readily to assume the risk, by diminishing the estimate he would otherwise form of it." Arn. on Ins. 489. "It is a part of the preliminary proceedings which propose the contract; and a warranty is a part of the contract as it has been completed." Ang. on F. & L. Ins. 178. "A want of truth in the representation is fatal, or not, to the insurance, as it happens to be material or immaterial to the risk undertaken." Supreme Council v. Beggs, 110 Ill. App. 139.

In our opinion, it is unnecessary to determine whether or not the contract is a warranty, because we regard the representations made in the application as material, and therefore the only question left for discussion is whether or not the appellant has shown the answers to be untrue.

On the part of the appellant the testimony of six witnesses was offered.

Dr. Dick testified that he was house physician and surgeon at the Cook County Hospital in June and July, 1905; that at that time he had been a member of the medical profession about a month, and had been connected with that hospital for about the same length of time; that he made a physical examination of the assured; that he had a tubercular sinus upon and just above the right gluteal fold; that a surgical operation was performed on the assured by Dr. Thomas Davis; that the witness was present at the operation; that the assured was about sixteen years of age, and that the assured afterwards worked in the linen room of the hospital.

Dr. Davis testified that he was connected with the Cook County Hospital in 1905; that he performed an operation on a man named Charles Davis; that the operation was a currettage of a tubercular sinus; that the right gluteal fold is a crease between the muscles of the buttocks; that the operation referred to consisted of a scraping out of the sinus with an instrument something like a spoon, and consisted of scraping out the granulations, which were infected and getting down to the bone, and scraping out the diseased bone; that the disease known as tubercular sinus is chronic; that a tubercular sinus, such as described, is essentially an open sore; that it is always preceded by an abscess of the hip. The witness testified on cross-examination that he did not remember whether he scraped the bone in this particular case; that it could not be determined without some sort of a test whether the wound was tubercular; that the test which

he made in the case of Charles Davis consisted of an examination of the sinus and the history of the patient; that he obtained his knowledge of the history of the case from other physicians.

Bertha Dickman testified that she had a talk with Charles Davis, in which he stated he had to go to the Cook County Hospital to have an operation performed; that after he came back from the hospital he said he felt better; that she saw him walking around, but did not observe that he was lame.

Annie Bruner testified that she had a talk with the assured after he came back from the hospital, in which he said that he underwent three operations at the County Hospital, and that he had consumption of the bone and was incurable. On cross-examination she said: "I never had any trouble with the Davis family, but they did all they could against me, but they never had a good word for people, but I always had a good word for them. I am always friendly to them, but they never was friendly to me. * * * Everybody knew he had consumption of the bone." She remembered no other part of the conversation.

William Bruner testified that the deceased told him he had a sore and that the deceased's father wanted to show it to him; that it was not stated what sort of a sore it was; that he put his hand on his side and said the sore was there; that it was a kind of consumption.

Bertha Haight testified that she asked the deceased what he was at the hospital for; that he replied he had been operated on; that he said he had tuberculosis of the hip, and had been operated on at the Cook County Hospital; that the doctors told him he never would live to see nineteen or twenty years; that he said they had scraped the bone; that the deceased was a little lame, but did not have to use a crutch.

The certificate of death gives the cause of death as asthma-valvular disease of the heart, and the duration of the disease ten days, and states that Charles Davis died on the 11th of October, 1907, at the age of eighteen

years and eleven months. Whether the disease of the heart, from which he is said to have died, is attributable in any way to the tubercular trouble does not appear.

The appellee, who was the mother of the assured, testified that she knew nothing about the doctors having performed an operation on her son when he was in the Cook County Hospital.

Charles Davis, father of the plaintiff, testified that his son returned from the hospital about the middle of August, 1905; that he went to work the next morning with him. He further testified that he made a physical examination of his son before he went to the hospital; that he saw a red spot and put a flaxseed poultice on it; that he continued the application of the poultices for three or four days, when the injured part broke and his son would not allow him to treat it any further, whereupon he sent his son to the hospital for treatment; that after his son came back from the hospital he worked on the railroad, throwing switches; that he (the father) saw the injured leg and that there was nothing the matter with it; that there was no scar on it of any kind; that it was entirely healed up, and when the place broke some matter came out of it, but not much; that his son continued to work until Christmas and was then laid off; that he afterwards worked at another place, and worked altogether at four or five different places.

M. J. Kill testified that he saw the assured, Charles Davis, nearly every day for almost three years prior to his death; that he walked all right; that witness saw him working for the railroad company, throwing switches; that he appeared to be a "healthy-looking" young fellow; that he never heard of his being in the Cook County Hospital or of his having had an operation.

Maud Ferriter testified that she saw the assured every evening after he came back from the hospital, and that he seemed to be all right.

Lulu Ferriter testified that she visited the assured once at the County Hospital; that after he came back from the hospital she used to play tag with him every night, and that he never appeared lame.

It will be noticed that Dr. Dick testified that Dr. Davis performed an operation. Dr. Davis himself, after testifying that he performed an operation, stated on cross-examination that he did not remember whether he scraped the bone in this particular case; that in some instances an open sore, such as the insured had, heals rapidly after the scraping process. If that was the result in this case it would account for the fact that the father, when he examined the leg, regarded it as healed.

The undisputed testimony in the case therefore is that the assured had had an open sore; that he had had a severe illness, and that he had undergone a surgical operation. It also tends to show that within two years of the date of the application for membership the assured had a tubercular affection, described as a tubercular sinus, upon and just above the right gluteal fold. The testimony of Dr. Davis, too, is undisputed, that the disease known as tubercular sinus is chronic, and that "tubercular sinus is essentially an open sore," and is always preceded by an abscess of the hip; that the open sore often heals when the bone beneath it is scraped.

The testimony of Bertha Dickman, Annie Bruner and Bertha Haight, all to the effect that the deceased told them he had gone to the hospital and had there been operated on, tends strongly to substantiate the testimony of Dr. Dick and Dr. Davis that such operation had been performed. It is true that by her cross-examination the testimony of Annie Bruner is somewhat weakened, as showing that the Davis family was not friendly to her, but there is nothing in the record to impeach or weaken in any way the testimony of Bertha Dickman and Bertha Haight.

From the testimony in this case, we are irresistibly

drawn to the conclusion that the assured gave false answers in his application, in stating substantially that he had never undergone a surgical operation; that he never had had an abscess of the hip or an open sore, and that he had not taken medical advice within three years. It has been held that the statement in an application that the applicant had never had heart disease was a material representation, and if false would avoid the policy (Continental Life Ins. Co. v. Rogers, 119 Ill. 474; Metropolitan Life Ins. Co. v. Moravec, 214 Ill. 186). It has also been held that a material misrepresentation, whether made intentionally and knowingly or through mistake and in good faith, will avoid the policy (United States Fidelity Co. v. First National Bank, 233 Ill. 475).

It is unnecessary to prolong this opinion. We are satisfied from the record that no reasonable mind, uninfluenced by passion or prejudice, would come to any other conclusion than that the answers to the questions contained in the application, heretofore mentioned, which application was made a part of the certificate, were false. Therefore the certificate became void and the appellee secured no rights thereunder.

The judgment will be reversed with a finding of fact.

*Reversed with finding of fact.*