**Dora Joseph, Appellee, v. New York Life Insurance Company, Appellant.**

**Gen. No. 25,300.**

1. INSURANCE, § 95*—*what constitutes contract of insurance.* Under a life insurance policy expressly providing that the policy and application should constitute the entire contract and that no representations made by the insured in his application could be interposed as a defense unless they were contained in the written application, the insurer could not be heard to say that other questions were asked the assured and other answers made than those appearing in the written application.

2. INSURANCE, § 204*—*what is effect of good faith of applicant when policy is claimed to have been obtained by misrepresentation.* Where it is sought to avoid a life insurance policy on the ground that the insured made false answers in his application, the question of the good faith of the applicant in making his answers, in the absence of an express provision that they are warranties, is always a material one, and the question in each case is whether the answers made by the applicant were knowingly false.

3. INSURANCE, § 347*—*what is effect of incontestible clause in policy.* Although a policy provided for its incontestibility after one year from its issuance, and the insured died within about a month of such issuance and shortly thereafter notice of rescission was given, the company had the right to file pleas more than one year from the date of issuance.

Appeal from the Superior Court of Cook county; the Hon. M. L.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

McKINLEY, Judge, presiding. Heard in this court at the October term, 1919. Affirmed. Opinion filed November 4, 1920.

HAMLIN, TOPLIFF & COOPER, for appellant; JAMES H. McINTOSH, of counsel.

MOSES, ROSENTHAL & KENNEDY, for appellee; WALTER BACHRACH, of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

On March 1, 1913, the New York Life Insurance Company issued its two policies to Simon Joseph, one for $1,000 and the other for $2,000, in which his wife, Dora Joseph, was named as beneficiary. March 30, 1913, Simon Joseph died. Liability under the policies was denied and Dora Joseph brought this suit. The case was decided on the pleadings. There was a finding and judgment in favor of plaintiff for $3,861.67, being the full amount of her claim, to reverse which defendant prosecutes this appeal.

The declaration consisted of two counts, one on each policy. The policies, of which the applications were a part, were set out *in hæc verba* and each contained the following provision: "The policy and the application therefor constitute the entire contract between the parties. All statements made by the insured shall, in absence of fraud, be deemed representations and not warranties, and no such statements shall avoid this policy or be used in defense to a claim hereunder unless it be contained in said written application, a copy of which was attached to this policy when delivered." The applications were attached to the policies and set out questions put to Joseph, and answers made by him. The application also set out "Answers made to the Medical Examiner," and contained the following: "I warrant and declare, on behalf of myself and of every person who shall have or claim any interest in any in-

surance made hereunder, that I have carefully read each and all of the above answers, that they are each written as made by me, that each of them is full, complete and true, and that to the best of my knowledge and belief I am a proper subject for life insurance. Each and all of my said answers are made by me to obtain said insurance, and I understand and agree that they are each material to the risk and that the Company believing them to be true will rely and act upon them." To each count defendant filed a special plea which set up that Simon Joseph had misrepresented and concealed material matters concerning the state of his health; that upon discovery of these facts (after Joseph's death) the company elected to rescind the policies and tendered back the premiums; that the tender was refused.

It was averred in the pleas that Joseph applied for insurance and submitted himself to defendant's physician for examination both orally and physically so that it could determine whether or not to issue a policy to him; that the following questions were put to Joseph and that he made the following answers:

"Q.   Have you ever raised or spat blood?   A.   No.

"Q.   Have you ever had or suffered from any of the following diseases:

   (A)   Of the brain or nervous system?   A.   No.

   (B)   Of the heart or lungs?   A.   No.

   (C)   Of the stomach, intestines, liver, kidneys or bladder?   A.   No.

   (D)   Of the skin, middle ear or eyes?   A.   No.

   (E)   Rheumatism, gout or syphilis?   A.   No.

"Q.   Have you consulted any physician for any ailment or illness not mentioned above?   A.   No."

Thereupon the Medical Examiner asked Joseph the following question:

"Q.   Has the applicant recently lost weight, and if so, how much, and to what is it due?"

And that Joseph answered that he had not. The plea then avers that each of the answers was false and

untrue and that Joseph "knew them to be false and untrue" and knew that they were to be relied and acted upon by the defendant in determining whether a policy should issue; that Joseph made them "with such knowledge for the purpose of defrauding and deceiving the defendant" and inducing it to issue a policy. The plea further averred that for 6 months prior to the examination Joseph had been passing blood and lost in weight approximately 30 pounds; that he was under the care of a physician for enteritis caused by carcinoma or cancer of the intestines; that he was then preparing for an operation for the removal of the cancer; that he was operated on and died shortly thereafter as a result thereof; that Joseph had been under the care of a physician for such disease long prior to the examination, "all of which said Joseph well knew and concealed from said examiner" for the purpose of defrauding the defendant and inducing it to issue a policy; that the answers were taken to be true and the company issued its policies on the strength of them, and upon discovery of the fraud after Joseph's death it tendered back the premium and claimed the policies were void. Afterward defendant filed additional pleas which were substantially like the special plea first filed except that a copy of the questions put to and the answers made by Joseph were set out *in hæc verba* in these pleas. It was also averred that Joseph knew his answers were false and untrue, and that he purposely, and with intent to deceive, concealed the true facts and that he knew that the policies would be issued in reliance upon the truthfulness of his answers. To these pleas plaintiff filed several replications, among other things setting up that if the answers made by Joseph were untrue he did not know that they were untrue; that he did not know he had suffered from any of the diseases mentioned in the questions put to him. Defendant demurred to these replications and the demurrer was overruled. The

first special plea was held bad on demurrer and defendant refusing to plead further, judgment was entered against it for the amount claimed.

Defendant first contends that its special plea set up a good defense of rescission by it of the policies on the ground that they were obtained by misrepresentation and concealment of material facts as to the state of health of the assured; that its defense is based not "on the contract" but on a rescission of it; that after the death of Joseph the insurance company first learned of the deception practiced upon it and that it then notified plaintiff of the deception, tendered back the premium and denied liability on the policies; that this constituted a rescission of the contract. In any view of the case, we must determine whether this plea set up a good defense. We think it did not, for the reason that it sought to set up the question whether Joseph had recently lost weight and the answers made which were not contained in the application, contrary to the terms of the policy, for it was there expressly provided that the policy and application should constitute the entire contract, and that no representation made by the assured in his application could be interposed as a defense to the policy unless such representation was contained in the written application. Defendant could not be heard to say that other questions were asked the assured and other answers made than those appearing in the written application. This it sought to do and the demurrer was, therefore, properly sustained. In the case of *Archer v. Equitable Life Assur. Society,* 218 N. Y. 18, it was held that the insurance company could not interpose as a defense to an action on one of its policies that the assured had intentionally made false representations to questions asked him for the reason that the statute of that State provided that every policy issued should constitute the entire contract between the parties and that nothing should be incorporated by reference to any constitution, by-

laws, rules, application or other writing "unless the same are indorsed upon or attached to the policy." It was there said: "It is clear that the legislature enacted by the section that the policy, that is, the paper or document, should contain, physically, the entire contract." And we think it can make no difference whether the provision is found in the statute or in the contract itself.

It is next contended by defendant that where answers made by the assured to questions put to him are false, this avoids the policy whether the assured knew that they were false or not, that it is of no avail that the assured did not know his answers were untrue. This question is not at all free from difficulty and the decisions of this and other States are apparently not harmonious. The defendant in support of this proposition cites the cases of *United States Fidelity & Guaranty Co. v. First Nat. Bank of Dundee,* 233 Ill. 475; *Smith v. Bankers Life Ass'n,* 157 Ill. App. 236; *Davis v. Catholic Order of Foresters,* 165 Ill. App. 137.

The *United States Fidelity Co.* case was a suit in chancery seeking the cancellation of a fidelity bond guaranteeing the bank against loss by reason of any wrongdoing of its employees, including its cashier, on the ground that the bond was procured by false and fraudulent representations of the bank to the effect that the books and accounts of the bank "were examined by us from time to time in the regular course of business and we found them correct"; that all the moneys handled by the cashier had been accounted for and that he had performed his duties in an acceptable and satisfactory manner. The bank denied that there were any misrepresentations made and filed its crossbill seeking to recover the amount of money which its cashier had embezzled during the period covered by the bond. The chancellor found that the bank had made no misrepresentations and held the company liable. The decree was affirmed by this court, 137 Ill.

App. 382, where the court said (p. 391): "We conclude, therefore, that the statements or representations made in the certificate * * * were justified by the facts and were substantially true." The Supreme Court affirmed the judgment of this court, and said (p. 483): "Appellant insists that the failure of the bank to discover this discrepancy (of the cashier) is conclusive proof that no examination was, in fact, made. This conclusion is not warranted by the facts and circumstances in this record." And continuing the court further said (p. 485): "We, therefore, agree with the conclusion of the trial court and the Appellate Court that the certificate of January 22, 1902, was substantially true." From this it clearly appears that the question whether the bank knew that at the time it applied for the bond the cashier was short in his accounts was in no way involved—the question of knowledge was not in the case. There was no misrepresentation in fact made.

The *Smith* case was an action on an insurance policy. The defense was that the assured had made false representations by way of answer to questions put to him in his application for insurance and that the policy was, therefore, void. The evidence showed (see same case 123 Ill. App. 392) that the assured had been consulting several physicians at different times up until a short time before he applied for insurance, and that the answers made by him to the questions were knowingly false. The court, there speaking by Mr. Justice Holdom, said (p. 237): "Whether the answer of Black that he was in good health at the time of his application for membership in defendant association was a representation or a warranty, is of no moment. Such answer was not only material but vital to the making of the contract of insurance, and therefore whether the answer was intentionally false or simply erroneous is of no importance. If untrue in fact, it vitiates and voids the certificate issued in faith of its verity."

In that case it is obvious that the assured knowingly made false answers to the questions put to him touching the state of his health.

The *Davis* case was a suit upon a benefit certificate. It was provided in the contract of insurance that the answers made in the application were warranties. The pleas set up that the insured knowingly made false answers to questions in the application put to him as to his health. It is there said (p. 144): "It has also been held that a material misrepresentation, whether made intentionally and knowingly or through mistake and in good faith, will avoid the policy." In that case also the evidence showed that the insured must be presumed to have known that the answers made by him were false.

In *Minnesota Mut. Life Ins. Co. v. Link*, 230 Ill. 273, which was an action on a life insurance policy, the court, by Mr. Justice Vickers (p. 274), said: "The trial court held that the alleged false statements were mere representations and not warranties, and that appellant could not rest a defense upon such statements without averring and proving their materiality and that they were known to be false by the assured at the time they were made." There the contention of the insurance company was that the assured, by answering in the negative to questions asking whether he had ever had any of the enumerated diseases, warranted the answers to be true, "and that if they were false in any particular such falsity will avoid the policy, whether such answers were material to the risk or not, and notwithstanding they may have been made unintentionally and innocently through mere mistake or inadvertence." Continuing the court said (p. 276): "It is not reasonable to suppose that Miller took this policy with the distinct understanding that it would be void and that all premiums paid by him on it were a mere gratuity conferred upon the company, and yet, if the absolute truth of all of the answers to the more

than three-score questions was warranted, there is scarcely a probability that any liability could ever accrue on such policy. It is well known, as is observed by the Supreme Court of the United States in *Moulor v. American Life Ins. Co.*, 111 U. S. 335, that a person may have diseases of the presence of which in his system he has and can have no knowledge and which even skillful physicians are unable to discover after a most searching examination. It is therefore unreasonable that persons who organize corporations for the purpose of selling life insurance would exact a warranty of an applicant for insurance of the truth of a matter which, from the very nature of the inquiry, might be wholly unknown to the applicant, and still more unreasonable that any sane person would knowingly warrant that he had never had, in any form or any degree, any disease embraced within the long catalogue embodied in this application.''

*Globe Mut. Life Ins. Ass'n v. Wagner,* 188 Ill. 133, was an action of assumpsit brought on an insurance policy. The chief ground of defense was that the assured made a false answer to the question, ''How many brothers dead?'' The evidence showed that a brother of the assured had died in London more than 4 years before the application. There was no evidence that he knew his brother was dead but it was contended that whether he knew it or not made no difference and that since the answer was false the policy was void. The court there said (p. 137): ''In the absence of explicit, unequivocal stipulations requiring such an interpretation, it should not be inferred that the insured or the appellee took a life policy with the distinct understanding that it should be void if any statements made in the medical examination should be false, whether the insured was conscious of the falsity thereof or not. (*Moulor v. American Life Ins. Co.,* 111 U. S. 335.) Whether or not the deceased knew of the death of his brother at the time of the application for

insurance was a question for the jury, and no evidence of such knowledge appears in the record. To hold that, as a precedent to any binding contract, he should guarantee absolutely that none of his brothers were dead would be unreasonable, in the absence of a more explicit stipulation than here appears. It not infrequently happens that a man loses trace of all or a part of his relations, and to hold him to absolutely guarantee that they were living, in order that he might obtain insurance, would sometimes be to require an impossibility, and would be almost absurd." The court then quotes with approval from the *Moulor* case and held that false answers in the absence of knowledge on the part of the assured at the time would not avoid the policy.

*Moulor v. American Life Ins. Co.,* 111 U. S. 335, above referred to, was an action on a policy of insurance. "The main defense was that the insured had been afflicted with scrofula, asthma and consumption prior to the making of his application, and that, in view of his statement that he had never been so afflicted, the policy was, by its terms, null and void." There was evidence tending to show that the assured had been afflicted with some of these diseases prior to his application. There was also evidence tending to show that he was in sound health at that time and that he did not know or believe that he had been afflicted with any of these diseases. The trial judge instructed the jury that it was of no consequence in such case whether the insured knew his answers true or not; that he was bound by them. The Supreme Court on review held that if his answers were warranties, no recovery could be had unless they were true, but if the answers were not warranties, the question whether the answers were knowingly false was a material one. Mr. Justice Harlan, delivering the opinion of the court, said (p. 343): "The applicant was required to answer yes or no as to whether he had been afflicted with cer-

tain diseases. In respect of some of those diseases, particularly consumption, and diseases of the lungs, heart and other internal organs, common experience informs us that an individual may have them, in active form, without at the time being conscious of the fact, and beyond the power of any one, however learned or skilful, to discover. Did the company expect, when requiring categorical answers as to the existence of diseases of that character, that the applicant should answer with absolute certainty about matters of which certainty could not possibly be predicated? Did it intend to put upon him the responsibility of knowing that which, perhaps, no one, however thoroughly trained in the study of human diseases, could possibly ascertain?" Continuing the court further said: "If it be said that an individual could not be afflicted with the diseases specified in the application, without being cognizant of the fact, the answer is that the jury would, in that case, have no serious difficulty in finding that he had failed to communicate to the company what he knew or should have known was material to the risk, and that consequently, for the want of 'fair and true answers,' the policy was, by its terms, null and void." It was held that unless his answer was knowingly false, relief would not be barred and that the question was one for the jury.

In *Bloomington Mut. Life Benefit Ass'n v. Cummins,* 53 Ill. App. 530, it is said: "The rule of law is believed to be in regard to representations, as distinguished from warranties, that motive, or knowledge of material facts about which direct inquiry is made, is not issuable, but is as to immaterial facts. * * * There may be some exceptions to this general rule, as in the case of lurking or constitutional tendency to certain diseases of the insured, which may even be manifest to the careful observer, and yet not be consciously recognized by the insured himself. It is natural for a man to desire to disbelieve that his body

is afflicted with a constitutional taint, and therefore he does not readily give credence to manifestations that to other people are apparent. Therefore, as to such matters, it is insisted in many well considered cases that the honesty and good faith of his answers, even to direct inquiry, is an issuable fact. *Moulor v. American Life Ins. Co.*, 111 U. S. 335. If such tendencies are manifest at the time of the insurance, there seems to be no good reason why the insurance company should not protect itself by the physical examination of its medical examiner. If in such case the examiner reports the insured as a fit subject for insurance, this is some evidence that the insured himself was not at the time aware of the character of his affliction, and the legal effect of his answers should be determined by the test of honesty and good faith.''

In *Metropolitan Life Ins. Co. v. Larson,* 85 Ill. App. 143, it was held that false answers in an application for insurance did not necessarily invalidate the contract unless the answers were known to be false at the time made, and were made by the applicant for the purpose of defrauding the insurance company. To the same effect is *Globe Mut. Life Ass'n v. March,* 118 Ill. App. 261. See also the case of *Raymer v. Modern Brotherhood of America,* 157 Ill. App. 510, where the plea was that the insured had knowingly made false answers in his application. Mr. Justice Dibell, speaking for the court, said (p. 519) : ''As already shown, the form of the issues submitted by appellant made the validity of the defense here interposed to depend upon whether Arthur Raymer made the answers in good faith, believing them to be true. We are of the opinion that it is the general tenor of the cases cited and also of *Globe Mut. Life Ins. Ass'n v. Wagner,* 188 Ill. 133, * * * that all that was required of the applicant was that the answers should be a fair statement of the facts, honestly and truly given, as understood by the applicant. Moreover, it is a rule applicable to con-

tracts generally that to authorize rescission because of the untruth of a representation relied upon in making a contract, it must be shown that the party making the untrue representation knew or believed it to be untrue. * * * 'No misrepresentation is fraudulent at law, unless it is made with actual knowledge of its falsity, or under such circumstances that the law must necessarily impute such knowledge to the party at the time when he makes it.' Therefore both by the rules of law applicable to the case and by the issues upon which the case was tried, it was essential to establish a defense that it be proven not only that some representation made by Arthur Raymer was material and untrue, but also that he knew it to be untrue or did not act in good faith in making it."

In *Deming v. Prudential Ins. Co. of America,* 169 Ill. App. 96, it was held that to avoid a policy on the ground of false answers "it should appear from the proofs the answers of Deming were false at the time they were made, that he knew that they were untrue and that the fact concealed or the falsehood expressed was material to the risk. *Globe Mut. Ins. Ass'n v. Wagner,* 188 Ill. 133."

In passing on this same question in the case of *Diehl v. Mutual Life Ins. Co.,* 176 Ill. App. 462, the court said (p. 465): "Representations in an application for insurance made in good faith, even though untrue will not prevent a recovery. To avail as a defense, the defense must aver and prove the representations in an application for insurance are false and that the applicant knew them to be false at the time he made them. This proposition is supported by the following authorities: *Continental Life Ins. Co. v. Rogers,* 119 Ill. 474; *Globe Mut. Life Ins. Ass'n v. Wagner,* 188 Ill. 133, and *Provident Sav. Life Assur. Society v. Cannon,* 103 Ill. App. 536."

In 25 Cyc. 801, it is said: "Representations as to a material matter which are false in fact avoid the pol-

icy, although not fraudulently made. But so far as the questions propounded in the application call for answers founded upon the knowledge or belief of the applicant, a misstatement or omission to answer will not avoid the policy unless wilfully and knowingly made with an attempt to deceive.''

In 1 Bacon on Insurance, sec. 265, the author in discussing the question under consideration said: ''In a case where the issue was as to false representation in an application as to the good health and freedom from disease of the applicant, in holding that tuberculosis of the lungs or of the bones of the wrist is a material matter, the court (86 Neb. 372) said: 'If the applicant had no knowledge of the fact that his lungs were afflicted with tuberculosis, or that it was tubercular disease of the bones of the wrist   *   *   *   and the answers to the questions in the application were not made as absolute statements of facts, but as matters of belief or opinion, and as to which he might be honestly mistaken, then, under former decisions of this court, the answers were mere representations, and his beneficiary might recover if they were made honestly and in good faith.   *   *   *   If the evidence should prove, however, that he had consulted reputable physicians as to his condition, and that he had been told by them that he was suffering from such an insidious and dangerous disease as tuberculosis at a time so near the time of making the application as to rebut and repel the idea of forgetfulness or good faith on his part, the concealment of such a fact, so material to the risk, and one that, if known, his application would have been rejected, would avoid the contract.' ''

In *Royal Neighbors of America v. Wallace* (Neb.), 99 N. W. 256, the court said: ''The plaintiff in error   *   *   *   insists that knowledge of the falsity of her answers by the insured is immaterial; that the true rule is that a false representation in a matter material to the risk avoids the policy, regardless of whether the

applicant knew the representation to be false or not. As to matters with which the applicant is charged with knowledge, this is undoubtedly true, and this court has held that a false representation relating to the amount of liens on property will avoid a fire risk taken thereon. * * * Where, however, the questions propounded to the insured in his application are such that, in the nature of things, he can only express his opinion, giving his best judgment, this rule does not and should not obtain. * * * Whether a party is at the time affected with any disease which can be said to affect the risk, or whether at some prior period of his life he has suffered from any particular disease, is a matter upon which the best medical men of the country often differ, and are often in doubt, and to say that an honest answer given by the applicant—an answer containing his best judgment and honest opinion —would avoid the risk is going further than we think is warranted by the authorities.''

From a consideration of the authorities to which we have referred and of many others which we have examined, we think the law is that where it is sought to avoid a policy on the ground that the insured made false answers in his application, the question of the good faith of the applicant in making his answers (in the absence of an express provision that they are warranties) is always a material one, and as Mr. Justice Harlan said in the *Moulor* case: ''If it be said that an individual could not be afflicted with the diseases specified in the application without being cognizant of the fact, the answer is that the jury, in that case, would have no serious difficulty in finding that he had failed to communicate to the company what he knew or should have known was material to the risk, * * * and the policy was, by its terms, null and void.''

While there is some apparent conflict in the language used in the reported opinions, yet we think upon a careful analysis of each case it will be found that

there is no real conflict; that the question in each case is whether the answers made by the applicant were knowingly false. Other authorities sustain this view. *Donahue v. Mutual Life Ins. Co.*, 37 N. Dak. 203; *Baer v. State Life Ins. Co.*, 256 Pa. 177; *Oplinger v. New York Life Ins. Co.*, 253 Pa. 328; *Sharrer v. Capital Life Ins. Co.*, 102 Kan. 650; *Reserve Loan Life Ins. Co. v. Isom*, 173 Pac. (Okla.) 841; *Mutual Life Ins. Co. v. Morgan*, 39 Okla. 205; *Guarraia v. Metropolitan Life Ins. Co.*, 90 N. J. L. 682; *Suravitz v. Prudential Ins. Co.*, 244 Pa. 582.

In the instant case, the pleas filed by the defendant expressly averred that the answers as made by the insured to the questions propounded to him were knowingly false. The replication denied that the answers were knowingly false and thus joined issue on that question. We are, therefore, of the opinion that the demurrer to the replication was properly overruled.

Plaintiff makes the point that since the policies provided that they should be incontestible after one year from the date of issue, that certain pleas of the defendant filed more than one year after the date of the issuance of the policies would not lie. The policies were in effect but about a month when the deceased died. Shortly thereafter the defendant notified plaintiff that they had rescinded the policies and denied any liability thereunder, and within a few months this suit was brought. The defendant at different times filed its pleas, some of them more than one year from the date of the issuance of the policies. We think it had the right to do this.

The judgment of the superior court of Cook county is affirmed.

*Affirmed.*

Taylor, P. J. and Thomson, J., concur.