**Mary O'Kane, Appellee, v. National Council of the Knights and Ladies of Security, Appellant.**

### Gen. No. 27,305.

1. FRATERNAL BENEFICIARY ASSOCIATIONS—*proof of cause of death of member's kin by death certificates.* In an action by the beneficiary for the amount of the benefit certificate, payment of which was refused on the ground of false answers to warranties in the application as to the cause of death of the member's father and sister, certified copies of the death certificates of such persons made on printed blanks in two parts, the first of which is designated "undertaker's report of death" and the second part "physician's certificate of cause of death" are admissible to prove the cause of their deaths, where the physician's certificate in each case states the cause of death and the undertaker's report, although not required by law to be made, contains nothing prejudicial to the beneficiary.

2. FRATERNAL BENEFICIARY ASSOCIATIONS—*admissibility of application without testimony of subscribing witness.* In an action by a beneficiary for the amount due on a benefit certificate, the member's application is admissible in evidence on the issue whether

370        APPELLATE COURTS OF ILLINOIS.

O'Kane v. National Council of the K. & L. of S., 227 Ill. App. 369.

the member made false answers to certain warranties therein, even though a subscribing witness thereon is not called to testify.

3. FRATERNAL BENEFICIARY ASSOCIATIONS—*necessity for proof that member did not make false warranties.* A judgment for the beneficiary in an action on a death benefit certificate cannot be sustained where the answers to certain questions in the application were warranties and there is evidence that they were false and it is admitted that the member signed the application, without proof that the answers were not in fact made by the member or of their falsity.

Appeal by defendant from the County Court of Cook county; the Hon. FRANK S. RIGHEIMER, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1921. Reversed and remanded. Opinion filed January 10, 1923.

A. W. FULTON, JOHN V. McCORMICK and S. J. FULTON, for appellant.

O'BRIEN, RUTLEDGE & HAYES, for appellee.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiff brought suit against defendant to recover $1,000 claimed to be due her on a benefit certificate. At the close of all the evidence plaintiff moved the court to instruct the jury to return a verdict for the amount of her claim. At the same time defendant moved the court to direct a verdict in its favor. The court denied defendant's motion and granted plaintiff's motion. The jury accordingly returned a verdict for $1,000 in favor of plaintiff on which judgment was rendered, to reverse which defendant prosecutes this appeal.

In the record the defendant is stated to be a "fraternal beneficiary society," and the evidence shows that it issued its "beneficiary certificate" for $1,000 on January 2, 1917, to Rose O'Kane, plaintiff's daughter, who at that time was twenty-six years of age; that she died February 29, 1920, from "appendicitis post operative pneumonia" and that a contributory cause

of her death was miscarriage. Proof of death was made in accordance with the by-laws but payment was refused on the ground that the deceased had made false answers to her application, wherein she stated that her father had died of pneumonia at Chicago on May 9, 1905, at the age of forty-six years, and that her sister Mayme died as the result of a miscarriage on August 16, 1911, at the age of twenty-eight years, when the fact was that both the father and sister died of consumption. These matters were set up in special pleas to which plaintiff replied, denying that the statements set up in the pleas and alleged to have been made by Rose O'Kane in her application were made by her, and denying that she made any representations as to the cause of death of either her father or sister.

The original application signed by Rose O'Kane, the certificate, a copy of the constitution and by-laws of the defendant and certified copies of the doctor's certificate showing, among other things, the cause of death of the father and sister, also the certificate showing the cause of death of Rose O'Kane were introduced in evidence. No evidence was offered by the defendant tending to show that Rose O'Kane knew of the falsity of the answers alleged to be false. But the defendant took the position that if the answers were not literally true, this would be a complete defense to plaintiff's claim because the answers were warranties. On the other hand, plaintiff offered no evidence to substantiate the allegations of her replication to the effect that the written answers in the application were not made by Rose O'Kane.

Of course, if the answers complained of were made, as shown in the application, and were warranties and not literally true, there could be no recovery. But if the answers were but representations and were untrue, this would not bar a recovery unless such false answers were knowingly made. We announced this rule of law after a most careful consideration of the

question in the case of *Joseph v. New York Life Ins. Co.,* 219 Ill. App. 452. That case is now pending on rehearing in the Supreme Court of this State.

Plaintiff contends that the court erred in admitting over her objection the certified copies of the death cer-tificates of the father and sister on the ground that each of the certificates purported to be the report of an undertaker. The statute requires that a certificate made by the attending physician be filed in the office of the county clerk showing, among other things, the cause of death of deceased persons. The certified copies of these certificates concerning the father and sister are on printed blanks. The first part of the blank is designated "Undertaker's Report of Death" and the second part "Physician's Certificate of Cause of Death." Counsel for the plaintiff contend that these were improperly admitted because there is no law requiring an undertaker to make such a report. We think the blanks are not in good form. They should be entitled "Physician's Certificate of Cause of Death" only, and while, without explanation, it ap-pears that part of the certificate was made out by the undertaker, yet there is nothing in it that would in any way prejudice the plaintiff. The doctor's certifies that the cause of the death of the father was "pulmo-nary tuberculosis" and that the death of the sister was caused by "acute pulmonary tuberculosis." We think there was no substantial error in admitting these in evidence. Nor is there any merit in plaintiff's point that the application was not properly admitted because a subscribing witness to it was not called to tes-tify. The cases cited by counsel for plaintiff have no application to such a situation as we have here. It was admitted that the application was the original one signed by Rose O'Kane, and there is nothing that has been called to our attention or that we have observed on a careful examination of it that would require any explanation on the part of the defendant before it

should be received in evidence. *Gage v. City,* 225 Ill. 219.

We think the question whether the answers made by Rose O'Kane in the application were warranties is controlling here. If they are, of course, no recovery can be had. In passing on a certificate issued by this same defendant and where the facts were similar to the facts in the instant case, Mr. Justice Matchett, in rendering an opinion in another division of this court, held that they were representations and not warranties. *Hancock v. National Council of Knights and Ladies of Security,* 222 Ill. App. 647. This case went to the Supreme Court and it was there held that the answers were warranties and that no recovery could be had. *Hancock v. National Council of Knights and Ladies of Security,* 303 Ill. 66. We are unable to distinguish the instant case from the *Hancock* case and, therefore, must hold that the answers made by Rose O'Kane were warranties. But since it appears in the *Hancock* case that the court relied on the abstract of the record, which was rather meager, and did not refer to the record, we think we ought to say more here.

In the case at bar the certificate states that it is issued "in consideration of the agreements and warranties contained in her application and medical examination * * * and in accordance with and under the provisions of the laws of the Order" then in force or thereafter adopted. The application is filled upon a blank form containing 45 questions some of which are divided into several subdivisions. Among the questions the following appear: "3. (a) Your exact height? 5 ft. 6 inches. (b) Your correct weight? 140 lbs. (c) Is your height or weight a family trait? Yes. * * * 9. (a) Have any of your Grand Parents or either of your Parents, or your Brothers or Sisters, or your Wife or Husband or Children or any of your Uncles or Aunts, been afflicted with Consumption, Scrofula, Cancer, Insanity, Epilepsy, or Heart

Disease? No. (b) Has any member of your household during the last two years, either died of or suffered from Cough, Consumption or Lung Disease? No. (c) Which of your parents do you resemble the more? Mother. * * * 10 (b) Have you within the last two years, been associated in business with, or engaged in any employment or occupation in the same room with, or lived or boarded in the family with any person who was afflicted with or has died from consumption? No. * * * 12. I have not now and never have had, and no physician has ever treated me for, or advised or informed me that I had any of the following named diseases, or disease of any of the following named organs: Abscess, Appendicitis, Apoplexy, Asthma, Bright's Disease, Bronchitis, *Brain* Disease, Bladder Disease, Bowel Disease, Cancer, Cough (habitual), Consumption in any form, Delirium Tremens, Dropsy, Diabetes, Diarrhœa (chronic), Ear Disease, Epilepsy, Erysipelas, Eye Disease, Enlarged Glands, Fast Heart, Fistula, Fits or Convulsions, Gall Stones, Gastritis, Goitre, Gout, Gravel, Genital Organs (disease of), Hemorrhages of any kind, *Heart* Disease, Insanity, *Kidney* Disease, *Liver* Disease, *Lung* Disease, La Grippe, *Nervous System* (disease of), Open Sores, Palpitation of the Heart, Paralysis, Pellagra, Pleurisy, Pneumonia, Rectal Disease, Rheumatism in any form, Scrofula, Skin Disease, *Spinal* Disease, Spitting or Raising of Blood, *Stomach* Disease, Stricture, Sunstroke, Swelling of the Limbs or Face, Syphilis, Tumors of any kind, Typhoid Fever, Ulcers, Varicose Veins, or any disease of Veins, Vertigo, or any personal injury. Except No. * * * 20 (d) If ruptured now or hereafter ruptured, do you promise to wear a well fitting truss and agree to do so while a member of this Order? Yes."

Then follow a great many other questions which, for the purpose of this opinion, it is not necessary to set forth here. Following the last question, which is

numbered 45, the application contains the following:

"I HEREBY CERTIFY that I am temperate in my habits, and am in sound physical and mental condition and that I am a fit subject for life insurance.

"I HEREBY make application for a beneficiary certificate from the NATIONAL COUNCIL OF THE KNIGHTS AND LADIES OF SECURITY. And I hereby declare that the foregoing answers and statements are true, full and correct, and I acknowledge and agree that the said answers and statements, with this application, shall form the basis of my agreement with the Order, and constitute a warranty. I hereby make my medical examination a part of this application and agree that this application and medical examination shall be considered a part of my beneficiary certificate and together with the constitution and laws of the society as now existing or hereafter amended shall constitute my contract with the society.

"I FURTHER DECLARE AND AGREE·that I have verified ° each of the foregoing answers and statements from 1 to 45 inclusive and that I know and understand the contents thereof and that the answers and statements as written herein are as given by me.  *  *  *  (The following applies only to applicants who have not been successfully vaccinated.) I further agree, not having been successfully vaccinated, to waive all benefits under the benefit certificate, which may be issued to me in case of my death resulting from Smallpox." Stamped at the bottom of this application appears: "Photographic copy of application attached to certificate."

On the back of the application appears the medical examiner's report wherein it is stated that the doctor has been regularly appointed and commissioned medical examiner of the society; that he is a graduate of "B.M.C." in 1911; that the rate of pulse when the applicant was sitting was 75 and 76 when standing. Then it is said: "Does the pulse intermit, become irregular, or unsteady at this examination? No." It is there also stated that the "impulse and the area of cardiac dullness" of Rose O'Kane are normal; that

376    APPELLATE COURTS OF ILLINOIS.

O'Kane v. National Council of the K. & L. of S., 227 Ill. App. 369.

the "valvular sounds and rhythm" are normal; that the examination indicated freedom from diseases of the heart and blood vessels; that there were 18 respirations per minute when standing; that the circumference of the chest, full forced inspiration, was 40 inches, and at extreme expiration 37 inches; that the respiration is "full, easy and regular, and the murmur clear and distinct in all parts of both lungs"; that the examiner found the "thoracic organs and their appendages in a healthful condition"; that the examiner had made "careful Auscultation and Percussion of the thorax WITH ALL HEAVY AND STARCHED CLOTHING REMOVED"; that the examination indicated that the glands of the throat and mouth were in a healthful condition; that there were no indications of gastric, liver or intestinal diseases; that there were marks of identification or successful vaccination; that the examiner considered the applicant "*free from* cough, difficulty of breathing, palpitation of the heart, swelling of face, abdomen and extremities, disease of the brain, spine, or of the *nervous system.*" The examiner's report then stated what he found upon a urinalysis, which is set forth in detail.

The certificate issued by the defendant contained the following:

"This Beneficiary Certificate is issued by said National Council and accepted by the member only upon the following express warranties, conditions and agreements.

"1. That the application for membership in this Order, made by the said member, together with the report of the medical examiner, which is on file in the office of the National Secretary, and both of which are made a part hereof, are true in all respects, and each and every part thereof shall be held to be a strict warranty and to form the only basis of the liability of the Order to said member, or said member's beneficiaries, the same as if fully set forth in this Certificate, and that the application and medical examination herein referred to and the constitution and laws of the

society as the same now exist or as may be thereafter enacted, and this Beneficiary Certificate shall all be construed together as forming parts of the contract between the National Council and the member.

"2. That if said application and medical examination shall not be true in each and every part thereof, then this Beneficiary Certificate shall as to said member, or said member's beneficiaries, be absolutely null and void.

"3. This certificate is issued in consideration of the warranties and agreements made by the person named in this Certificate in said member's application to become a member of this Order and in said member's medical examination, and also in consideration of the payments made when initiated as a member, and said member's agreement to pay all assessments and dues to become due during the time said member shall remain a member of this Order, in the manner prescribed in the Laws of the Order."

We have set forth the foregoing parts of the application, medical examiner's report and certificate to demonstrate that nobody could answer the questions truthfully. Nor have we been advised from our experience nor from the record that any physician or surgeon however skilled he might be would be learned enough to answer the questions truthfully. It is perfectly apparent to anyone that not one dollar of recovery could ever be had in any case on such a certificate if contested. Mr. Justice Matchett in the opinion before mentioned said that the designation of the certificate as a "beneficiary certificate" was a misnomer if the answers there made in the application were held to be warranties. From the opinion, however, it appears that he examined only the abstract which was rather meager. After examining the application and certificate in this case it is obvious that such a certificate perpetrates a positive fraud on the members of this society. No recovery could be had on such certificate in any case if the claim were contested by the defendant. The application states that none of the

applicant's grandparents, none of her immediate family and none of her uncles or aunts had been afflicted with consumption, scrofula, cancer, epilepsy, insanity or heart disease. Of course, the defendant knew that she could not answer truthfully these questions. It is plain that no one could answer them with certainty. Moreover, she also states that she did not have any of the numerous diseases mentioned in question 12. She could not answer such questions truthfully. No one could. No physician has ever yet been known who possessed sufficient knowledge to do so. Not only this, but she warrants that everything the medical examiner stated in his report is true. She warrants that the doctor was a graduate of a certain school in a certain year; that he found her pulse to be 75 when sitting and 76 when standing. Of course she knew nothing about this and could not know. She also warrants that everything the doctor found in the urinalysis was literally true. Nothing need be said to show the absurdity of such a contention. A great many of the questions, as appears from those quoted in this opinion, were very complicated and full but when we came to the record in the case counsel leaves out most of them and only considers a small part that he is interested in, and the same thing appears to be true in the opinions rendered by the courts. In this manner the questions have been made to appear simple but they are not in reality the questions that appear in the application.

It is common knowledge that applications similar to the one in question are filled out in a comparatively few minutes, and with little or no consideration given by the applicant before the answers are written down. It is equally well known that it is understood that the questions call for a direct "yes" or "no" answer. *Moulor v. American Life Ins. Co.*, 111 U. S. 335. We think it clear from a consideration of the application that the defendant knew that Rose O'Kane was sup-

posed to answer the numerous questions truthfully only in so far as she could. The fact that the word "warranty" was used is not conclusive. It is the intention that controls. (*Hancock* case, *supra*.) But under the law as announced in the *Hancock* case, the answers were warranties and no recovery can be had, if such answers were in fact made by Rose O'Kane and were not true.

The judgment of the county court of Cook county is reversed and remanded.

*Reversed and remanded.*

THOMSON, P. J., and TAYLOR, J., concur.