**Edward Hranicka, Appellee, v. Prudential Insurance Company, Appellant.**

**Gen. No. 29,030.**

1. INSURANCE—*instruction as to effect of false answers in application.* In an action on an insurance policy, defended on the ground of false answers in the application, an instruction that if any of the answers were false and were material to the risk and the insured knew they were false or should have known it plaintiff could not recover, correctly stated the law.

2. EVIDENCE—*competency of hospital record in action on insurance policy.* In an action on a policy of life insurance where it appeared that insured was admitted to the county hospital and was examined by one of the physicians who wrote down her history and diagnosis, such record was admissible on the question of false answers in the application for insurance where the physician testified that, while he did not remember the insured, the record was written by him while he had the patient before him and in the course of his examination of her and that what he wrote was true.

3. INSURANCE—*sufficiency of proof as to applicant's knowledge of falsity of answers to application.* In an action on a policy of

life insurance, defended on the ground that the insured had falsely stated in the application that she was not affected with tuberculosis, evidence, including the examination and record of a physician who examined her when she was admitted to the county hospital which showed that she was suffering from tuberculosis at that time and that about three years previously she had been examined by a physician and her trouble diagnosed as tuberculosis, and also his testimony that her condition could not reasonably have developed solely since the time the application was signed, *held* to show that insured must have known that she had tuberculosis at the time she signed the application so that defendant's motion to instruct the jury to find in its favor should have been granted.

4. APPEAL AND ERROR—*propriety of using photostatic copies of documentary exhibits in abstract.* Photostatic copies of an application and insurance policy as contained in the abstract which contain letters so small that they can be read only with a lens capable of considerable magnification do not comply with Appellate Court Rule 18, requiring abstracts to be printed "in a neat and workmanlike manner, with pica type and leaded lines."

Appeal by defendant from the Municipal Court of Chicago; the Hon. GEORGE B. HOLMES, Judge, presiding. Heard in the third division of this court for the first district at the October term, 1923. Reversed. Opinion filed December 24, 1924.

HOYNE, O'CONNOR & RUBINKAM, for appellant.

FRED A. GARIEPY, for appellee; M. RAEDER and LLOYD LEHMON, of counsel.

MR. JUSTICE TAYLOR delivered the opinion of the court.

On June 5, 1920, Mary Hranicka, the wife of the plaintiff, Edward Hranicka, applied for industrial insurance in the defendant company in the sum of $385, and paid to an agent of the defendant the sum of $1.50 as premium, and on that day the defendant issued its policy for the above-mentioned amount. On November 17, 1920, the insured died at the Cook County Hospital. The attending physician's certificate of death recited pulmonary tuberculosis as the immediate

cause of death.   The policy was payable to the administrator of her estate.   On May 24, 1921, this suit was begun in the municipal court by her surviving husband, Edward Hranicka, administrator of her estate. On January 12, 1923, there was a trial and a verdict in favor of the plaintiff in the sum of $192.50.   A motion for a new trial was granted.   A second trial was had, and a verdict returned for the same amount. Judgment was entered on the latter verdict, and this appeal is therefrom.

It is alleged in the affidavit of merits that inasmuch as the policy provided that it should not take effect unless, upon its date, the insured was in sound health, and that as the insured was not in sound health at that time, there was no liability to the plaintiff.

It is further alleged that the policy was issued upon a written application which contains certain statements and answers as an inducement to the defendant to issue the policy, and that in the application the insured declared that the statements and answers which she made were complete and true, and agreed that those statements and answers should form the basis of the contract of insurance between her and the defendant.   It is further set up that she stated therein that her health at the time of making the application was good; that she had never been seriously sick, and never had consumption, spitting of blood, habitual cough or certain other diseases named in the application, before the making of said application; that at the time of the making of the application she had no physical defect or infirmity; that all of said statements and answers were material to the defendant's risk.   It is further set forth that the health of the insured at the time of the making of the application was not good; that she was seriously ill before the making of the application; that at and before the making of the application she had consumption, spitting of blood, a habitual cough and other diseases men-

tioned in the application; that at the time of making the application she had "a physical or mental defect or infirmity"; that, therefore, the said policy before the death of said insured was void and of no force and effect.

Two contentions are made for the defendant: First, that as a matter of law, the trial judge erred in instructing the jury that if they believed from the evidence that at the time of making the application any of the answers were false and were material to the risk and that the insured knew they were false or should have known it, plaintiff could not recover; and second, that the verdict is manifestly against the weight of the evidence.

As to the instruction, this court held in *Joseph v. New York Life Ins. Co.*, 219 Ill. App. 452, that the only question in such a case is whether the answer was knowingly false. The apt cases are reviewed at large in that opinion. That case is here decisive, and the contention that the trial judge erred is not tenable.

As to the evidence, an examination of the record shows, we think, quite conclusively that the deceased for some years prior to and up to the time of her death suffered from tuberculosis, and must have had knowledge of that fact. On September 24, 1920, she was admitted as a patient to the Cook County Hospital, and was examined by Dr. Kaufman. She died there on November 17, 1920, of tuberculosis. When admitted to the hospital she was examined by Dr. Kaufman, and he wrote down her history and his diagnosis. At the trial he testified that he had no recollection of the patient, but that the record which was introduced in evidence and which was produced by the medical record custodian of the Cook County Hospital was written by him while he had the patient before him and in the course of his examination of her, and that what he wrote was true. The records were therefore admissible. *Koch v. Pearson,* 219 Ill.

App. 468.   That record, which is quite elaborate, shows that the examination took place on September 24, 1920, at the hospital, and that his diagnosis was pulmonary tuberculosis.   That record shows that the doctor at that time wrote, as part of her record, the following:   "Patient states that she was perfectly well until ten years ago, when she had pleurisy about seven years ago and also La Grippe and felt weak and run down since then; that she has coughed almost every winter for a long time.   The patient states that about three years ago she had a lot of trouble which made her worry a great deal, and she happened to be examined by a doctor from the United Charities, and he diagnosed tuberculosis.   The patient went to M. T. Dispensary for the past three years.   Lately she became too weak and she was sent to the C. C. H.   Past History:   Denies T. B. in family history.   Habits: States she is very poor and was compelled to live in basement room with her family."   The doctor's testimony was further to the effect that an examination of her chest showed abnormal bronchial breathing; that the spaces above her collar bone were sunken and the chest emaciated; that an examination of the chest showed that there was some trouble there of a tubercular nature; that "rales" were present; that sounds are heard over the chest of the patient when there is an abnormal moisture present in the lung substance, and, as a rule, those sounds are interpreted as of a tubercular origin; that his examination justified, in his judgment, a diagnosis of advanced pulmonary tuberculosis in both lungs; that the condition he found as advanced tuberculosis could not reasonably occur in two or three months; that the disease she had was a chronic form of pulmonary tuberculosis.   Further, a card was introduced in evidence which shows an examination by Dr. Hill when she applied for employment by the Western Electric Company in 1917, and that shows that she had "rales" in the right apex,

that is, as the doctor said, rattling in the top of the right lung, which signifies a tendency toward solidification of the right lung, and indicates disease there, which would be one of the symptoms of consumption. The doctor stated that he would not say from the information on the card that the woman positively had tuberculosis at that time, but that the symptoms found and recorded by him would indicate whether she had consumption or not, that she had some serious disease, and that the statements on the card would necessarily mean that at that time she actually had diseased lungs.

The only counter evidence is the testimony of the husband, his father, one McCloud and Anna Rezk. The latter says she visited the insured two weeks before she went to the hospital, and that at that time she was doing her own housework, although she was weak; that she did her own washing and ironing, and other housework, and took care of her three children. She further stated that the insured did not have consumption, although she used to cough sometimes in the winter. The testimony of a neighbor, Catherine McCloud, was that she had never seen her ailing so that she could not do her work.

The husband of the deceased testified that he did not recall that his wife was ever seriously ill or sick; that he and his wife went to the Municipal Tuberculosis Dispensary on Racine Avenue probably three times and saw Drs. Hruby and Cohn, and Miss Herzog, of the United Charities, who took them over to the Racine Avenue Dispensary. The plaintiff's father testified that a doctor from the insurance company was at the plaintiff's house in April or May, and that he told him that he called to see the plaintiff's wife, but that he, the witness, was not present when the doctor examined her; that they asked him to go out; that the doctor was there about three-quarters of an hour; that the policy was applied for about four weeks be-

fore the plaintiff and his wife got it; that no application was made at the time the policy was applied for; that the doctor showed him his credentials as from the defendant company.

Taking all the evidence into consideration, we feel bound to conclude that the statements made by the insured as to consumption and habitual coughing were made with the knowledge that they were not true. The evidence of the witnesses for the plaintiff is too vague and general to overcome in any reasonable way the evidence for the defendant. There seems to be no doubt but that the insured was an ill woman for a long time prior to the application for the insurance, and that she must have known during that time that she was suffering from consumption. Her own statement as written down by Dr. Kaufman is not in any reasonable way refuted. In our judgment, therefore, the verdict is not only manifestly against the weight of the evidence, but the motion made on behalf of the defendant, at the close of all the evidence, to instruct the jury to find for the defendant should have been allowed.

In considering this case, it was necessary to examine the contents of both the application and the policy of insurance. Unfortunately, as those documents appear in what purport to be photostatic copies, both in the record and the abstract of record, they are not sufficiently legible, without unreasonable and microscopic examination, properly to inform the court as to the nature of their contents.

A court of review is dependent upon printed words, and they should be legible to ordinary sight without straining, or they are practically worthless. Here, in the abstract of record, what purports to be a photostatic copy of the application of insurance is presented a sheet of paper 4½ x 6¼ inches, containing important text, printed in letters as small as a "diamond" and blurred at that. It is altogether illegible,

save through a lens capable of considerable magnification. Rule 18 of this court provides that abstracts of record shall be printed "in a neat and workmanlike manner, with pica type and leaded lines." The abstract here presented does not comply with that rule. Further, an examination of the record itself shows also that the application and the policy, as they appear there, are capable of being read only with great difficulty and much loss of time.

We are well aware that photostatic copies of documents are now being economically and satisfactorily used in many ways; and it may be that it is possible to use the photostatic process for parts of records and abstracts. But, as to the latter, until rule 18 of this court is changed, it must be substantially complied with. In the new process, the area of the letters is white and the background a dark brown, and that of itself does not lend to added or equal legibility when compared with the conventional printed page of black letters upon a white background. It is, therefore, quite essential, if the new method is ever to become satisfactory for documents in this court, that the letters shall be at least as large as those prescribed in the rule referred to.

The judgment will be reversed.

*Reversed.*

O'CONNOR, P. J., and THOMSON, J., concur.