## Rudolph Blahofski, Appellee, v. Metropolitan Life Insurance Company, Appellant.

### Gen. No. 7,788.

INSURANCE—*materiality of representations as to health in application for life policy.* Representations in an application for life insurance that applicant had not been treated by a physician within five years except by one for scarlet fever, that she had not been under treatment in any dispensary, hospital or asylum except in an isolation hospital for scarlet fever and that she had not had pneumonia, tuberculosis or lung trouble, were material to the risk and a verdict for defendant should have been directed in an action on the policy when it appeared that insured had had pneumonia, had been confined in a hospital and treated for pulmonary tuberculosis and discharged improved but not cured, and that she died of pulmonary tuberculosis.

Appeal by defendant from the Circuit Court of Sangamon county; the Hon. E. S. SMITH, Judge, presiding. Heard in this court at the October term, 1924. Reversed with finding of fact. Opinion filed March 6, 1925.

ALLEN & CONVERSE, for appellant.

JOHN G. FRIEDMEYER, for appellee.

MR. JUSTICE NIEHAUS delivered the opinion of the court.

It appears from the evidence in this case that Anna Blahofski, the daughter of Rudolph Blahofski, the appellee, made application to the appellant, Metropolitan Life Insurance Company, about October 8, 1922, for a life insurance policy, in which the appellee was named as beneficiary, and upon her application the policy was thereafter issued on November 21, 1922, and the first premium of $24.40 paid by the beneficiary. About three months after the issuance of the policy, namely, February 6, 1923, Anna Blahofski died of pulmonary tuberculosis. Proofs of death were filed with the company, but payment of the policy was refused, and thereupon this suit was commenced in the

circuit court of Sangamon county to recover on the policy. The policy and the application were made a part of the insurance contract by the terms of the policy. The appellant, as a matter of defense, pleaded the general issue, also filed four special pleas. In the first plea it is averred that Anna Blahofski falsely represented in her application that she had not been under the care of any physician within five years except Dr. Aschauer, in the year 1920, and that he had treated her for scarlet fever, but that, as a matter of fact, she had also been under the care of another physician, namely, R. K. Campbell, who had treated her for pulmonary tuberculosis between June 9 and October 10, 1921. In the second special plea it is averred that Anna Blahofski had represented in her application that she had never had any disease of the lungs prior to the date of her application, whereas, in fact, she had had a disease of the lungs, as she well knew. In the third special plea, which was an additional plea, it is averred that Anna Blahofski had represented in her application that she had not been under treatment in any dispensary or hospital except St. John's Isolation Hospital, prior to her application for insurance, whereas in fact, as she well knew, she had also been confined in St. John's Sanitarium, in the county of Sangamon, from June 9 to October 10, 1921, and had been there treated during that time for pulmonary tuberculosis. And in the fourth special plea, which was also an additional plea, it is averred that Anna Blahofski in her application represented that prior to her application she had never had pneumonia, whereas the fact was, as she well knew, that she had had pneumonia. The appellee replied to the averments of the first special plea that Dr. R. K. Campbell had not treated Anna Blahofski for pulmonary tuberculosis between June 9 and October 10, 1921, and that her answers were true to the best of her knowledge, information and belief. Appellee's reply to the averments of the third special plea was

to the effect that the answer of Anna Blahofski written in her application to the effect that she had been in St. John's Isolation Hospital was erroneously written therein by the person taking her application and should have been written in St. John's Sanitarium; that there is no such institution in the City of Springfield known as the St. John's Isolation Hospital; and that said Anna Blahofski had in mind, and intended to make a true and correct answer, that she had been confined in St. John's Sanitarium for the period of time stated in the application, and that she had not been then and there treated for pulmonary tuberculosis but had been suffering from pneumonia. The appellee replied to the fourth special plea that Anna Blahofski had stated to the agent and medical examiner of the appellant that she had been advised by her then attending physician that she did have pneumonia before making said application, and that she had been confined in St. John's Sanitarium for a short period of time under treatment, but that she was discharged as cured long before the application for insurance was made. The averments in the pleas and the replies thereto constituted the issues of fact in the case. The trial of the case resulted in a verdict in favor of the appellee and a judgment for $1,063.33 against the appellant. This appeal is prosecuted from the judgment.

The evidence taken on the trial established conclusively, as matters of fact, that Anna Blahofski had been confined in St. John's Sanitarium at Riverton in Sangamon county from June 9 to October 10, 1921; that she had been there treated for pulmonary tuberculosis, a disease of the lungs, during all of that time, and that she was under the care of Drs. Campbell and East, Dr. East being at that time medical director of the sanitarium and Dr. Campbell his assistant; and that when she left the sanitarium the disease with which she was afflicted was not cured but

that her condition was improved. The proof also showed that there are two St. John's hospitals at Springfield, one known as St. John's Isolation Hospital, used for communicable diseases, and the other known as St. John's Sanitarium, located at Riverton, which is used for tuberculosis patients only. In her application for the insurance policy, Anna Blahofski's answer to the question concerning the disease with which she had been afflicted is contained in statement No. 2 in the application; and is as follows: "I have never had any of the following complaints or diseases: * * * consumption * * * disease of the lungs * * * pneumonia." And her representation concerning the physicians who had attended her within five years prior to her application is contained in Statement No. 4, as follows: "I have not been under the care of any physician within five years except * * * scarlet fever. Dr. Aschauer." Her representation concerning hospitals or institutions of that kind is contained in Statement No. 5, as follows: "I have never been under treatment in any dispensary, hospital or asylum, nor been an inmate of any alms house or other institutions, except St. John's Isolation Hospital 1920." Dr. Harry Otten, who was the medical examiner for the appellant company and who examined Anna Blahofski with reference to the condition of her health and prepared this part of her application for her, testified concerning the statement made by her, that she did not disclose at any time prior to the issuance of the policy that she had pneumonia, that she told him exactly what was written in the statements; that she told him she had not had any other physician except Dr. Aschauer within five years, and that she had Dr. Aschauer for scarlet fever; that she did not disclose that she had been in any other hospital, sanitarium or institution than the St. John's Hospital at Springfield; that she had been working there and took scarlet fever, and that they put her in a little house on Reynolds street, which is

called Isolation Hospital, and St. John's Hospital in Springfield; that she did not disclose that she had had any disease of the lungs prior to making this application; that St. John's Isolation Hospital is a house on Reynolds street on the hospital ground on the north side, and is used for contagious diseases in Springfield. That St. John's Sanitarium is a separate institution at Riverton, built for tuberculosis patients. The doctor also testified concerning the question of insurability, that in passing upon the acceptability of an applicant, pneumonia would be a matter of great consequence; that it is the matter of great consequence if an applicant has had disease of the lungs, and that pulmonary tuberculosis is a disease of the lungs caused by the tubercular germ, and is very serious; that the thoroughness of the examination depends upon a disclosure by the applicant that she had been treated by a physician within five years. If the applicant had not had any doctor within five years, it is taken for granted that her statements would prove that she is well. He also stated that if he had known that Anna Blahofski had been treated for pulmonary tuberculosis at St. John's Sanitarium at Riverton from June to October, 1921, and had left there as having improved but not been cured, he would not have recommended the acceptance of her application, and that the applicant would have been rejected. He also testified, in an application for insurance, that if there is reason to suppose that the applicant has had tuberculosis she would be thoroughly examined, and even X-ray pictures taken, and her temperature taken at different times of the day, and examined on different days. In case of a negative history, however, the examination with X-ray or an examination of the sputum is not ordinarily made; that the medical examiner relies on the answers and statements given by the applicant in making his examination. The inference which must necessarily be drawn from the evidence in the record is, not only that the insured falsely repre-

sented the fact that she had been treated by Drs. East and Campbell at St. John's Sanitarium about a year preceding her application for insurance, but had been treated there for pulmonary tuberculosis, a disease of the lungs which finally caused her death; and that she purposely concealed from the appellant company, and its medical examiner, the fact that she had had the disease known as pulmonary tuberculosis. The concealment of this fact was a matter of serious import, not only in determining the character of the physical examination to be made concerning her condition of health, but, in connection therewith, to determine the question of the risk to be assumed and the acceptability of her application for insurance. The false representations referred to were therefore material to the risk. False representations in answers to questions propounded for the purpose of ascertaining the applicant's condition of health, as bearing on the question of the assumption of the risk, are considered material to the risk. *Crosse v. Supreme Lodge Knights and Ladies of Honor,* 254 Ill. 80. It is stated in *United States Fidelity & Guaranty Co. v. First Nat. Bank of Dundee,* 233 Ill. 475: "The law is well settled, in its application to insurance contracts, * * *. A material misrepresentation, whether made intentionally and knowingly, or through mistake and in good faith, will avoid the policy."

The appellant made a motion, at the close of all the evidence, to direct the jury to find the issues for defendant, but the motion was denied. This motion should have been granted. It is apparent from the uncontroverted facts recited that the insurance contract represented by the policy was avoided by false representations of the insured which were material to the risk, and that therefore the appellee had no legal rights to recover under the policy. The judgment is therefore reversed.

*Reversed with finding of fact.*

Finding of fact to be embodied in the judgment: That the insured made false representations material to the risk to obtain the insurance policy sued on.