Charles P. Colby, Appellee, v. Great American Casualty Company, Appellant.

Gen. No. 8, 387.

Opinion filed February 3, 1930.

JOHN G. FRIEDMEYER, for appellant.

FRANK L. TRUTTER and GILLESPIE, BURKE & GILLESPIE, for appellee.

MR. JUSTICE SHURTLEFF delivered the opinion of the court.

This is a suit in assumpsit brought by appellee Charles P. Colby against appellant, Great American Casualty Company, an insurance corporation, to recover damages on an insurance policy issued by appellant on November 13, A. D. 1926, on the written application of appellee, which is a part of the policy, for indemnity on account of sickness which incapacitated appellee from performing any and every kind of duty pertaining to his occupation. The policy of insurance was an accident and indemnity policy in case of total loss of time from sickness.

The declaration contains one count in which a copy of the policy is set for, including the application, which is a part of the policy of insurance sued on. In the original count, appellee alleges that he paid the premium of $140 to appellant, continuing the insurance for the further term of 6 months from May 13, 1927, to November 13, 1927; that on November 3, 1927, he was ready and willing to tender and offered to pay appellant the further sum of $140 for the continuance of said insurance from November 13, 1927, to May 13, 1928, which appellant refused, and brings the same into court ready to be paid to appellant if it will accept the same. Appellee alleges that after the execution and delivery of said policy of insurance, while the same was in full force and effect, on May 3, 1927, appellee fell ill and on account of said illness was and has been totally and completely unable to perform each and every duty pertaining to his occupation, and was treated by a licensed physician. Appellee then negatives certain exceptions and provisions in the policy, and alleges that within 90 days from the beginning of the illness he was removed to a regularly incorporated hospital and there confined for a period of 4 weeks and expended weekly the sum of $50, aggregat-

ing $200. Appellee avers that appellant paid him the sum of $1,000 that was due and owing to him, and at the time of the beginning of the suit, indemnity and hospital charges were due him in the sum of $3,400, and alleges that appellant has refused and still refuses to pay the remaining sum due him, on the ground that appellee failed to fully answer the questions in the application for insurance; that his illness is due to a tubercular condition in existence before said policy took effect; and alleges that he did keep and perform and comply with all the provisions and conditions of said policy on his part.

Appellant filed a plea of nonassumpsit and seven special pleas as follows:

First. That the plaintiff made false and untrue answers with the intent to deceive, in his application, to questions therein propounded respecting his physical condition, and that such answers were material to the risk.

Second. That the plaintiff with intent to deceive, falsely and untruthfully affirmed in the application that he was in sound physical condition when in truth he was not, and that such answer was material to the risk.

Third. That the plaintiff falsely and untruthfully with intent to deceive replied in the negative to a question in the application asking him whether he had ever had, among other things, tuberculosis, when in truth and in fact he had, and that such answer was material to the risk.

Fourth. That the plaintiff falsely and untruthfully with intent to deceive, answered that he had been attended by a physician in March, 1922, for infection of upper lip, to a question asking him whether he had received medical or surgical attention within the last 5 years, which answer was material to the risk.

Fifth. That the plaintiff falsely affirmed that all answers in his application were true and complete, with the intention to deceive the defendant, and that said answer was material to the risk.

Sixth. That the illness for which the plaintiff claimed indemnity under the policy was not contracted by him and did not commence after the 15th day after the date contained in the policy of insurance, nor after the 15th day after said contract of insurance became effective, but commenced long before the effective date of said policy.

Seventh. That the policy sued upon was canceled by defendant at the expiration of the term for which the premium of $140 had been paid on May 13, 1927, said policy expiring on November 13, 1927, and that the policy was not in full force and effect from and after the 13th day of November, 1927, or at the time of the institution of this suit.

Appellee, by leave of court, replied double to the special pleas of the appellant by joining issue under the first replication to each count and by pleading a waiver and estoppel in his second replication to each plea. Rejoinders were filed by appellant to each second replication, so that an issue was raised on each plea and each replication.

The evidence in this record tends to show that appellee received a policy of insurance in the appellant company November 13, 1926, which, among other things, insured appellee against total disability from illness contracted and commencing 15 days after the effective date of the policy; that a semi-annual premium was paid upon this policy by the appellee and accepted by appellant on May 13, 1927, continuing the policy in force for 6 months, and that thereafter a further tender of premium was made on November 3, 1927, to continue said policy in force upon the expiration of 6 months' period, which appellant refused; that appellee went to a hospital on May 4, 1927, for an

operation to relieve him of a diseased condition of his intestines from which he had suffered for several months prior to that date; that following his release from the hospital appellee was, as a result of such illness, prevented from following the duties of his profession for 42 weeks, which under the terms of the policy entitled him to $4,600, upon which amount there had been paid $1,000 by the appellant company following appellee's release from the hospital. It is testified by the appellee that the first signs of this disease came on in January, 1927, and although an attempt was made by appellant to impeach this testimony through a conversation had between the appellee and the general agent of the appellant, it was admitted by the appellant's witness that the date of his conversation with appellee was ''early in the new year, 1927.''

Appellant, to sustain its various defenses under its seven special pleas, concentrated particularly upon its defenses of misrepresentation by the appellee in answering certain questions respecting his condition of health with the intent to defraud the appellant company. Appellant attempted to show by cross-examination of appellee that he had tuberculosis at the time he answered the questions asked in his application respecting his condition of health, and that he made such answers with full knowledge of his tubercular condition with the intent to deceive the appellant company. The evidence discloses that in 1918 appellee was discharged from the army and was told that he had tuberculosis, which he at that time disputed; that he had been engaged for 18½ years in the general practice of medicine and surgery in Springfield, Illinois, and since 1922 in the treatment of the eye, ear, nose and throat; that he had known the postive test for tubercule bacilli since his second year in medical school and following his discharge from the army applied this test to himself in the autumn of 1919, which test disclosed no tubercular infection. The testimony of three

doctors was introduced in rebuttal of appellee's evidence, tending to show that the disease resulting in total disability was contracted and commenced before the effective date of the policy, that is to say, that the said disease was contracted and commenced before November 28, 1926. The testimony of Dr. Patton of Springfield, Illinois, was to the effect that any opinion given by him respecting the duration of the disease prior to operation would be speculative, as in some cases tuberculosis condition of that kind develops very rapidly and in others remains dormant for long periods. He stated that it was generally believed that practically all individuals who reach adult life, at some time during their life, have had tubercular infection but may have been cured, and that it was a tendency of nature to effect a cure of that infection in a number of cases, and that a person may have tubercular infection for a long time and not manifest any illness or disease. The testimony of Dr. Compton was to the effect that the length of time before the operation that such condition existed could not be determined by examination of the mass taken from the body. Dr. Richard F. Herndon, a practicing physican of Springfield, testified that he had examined appellee in April or May, 1927, and that in his opinion the disease had been there at least three months and probably some weeks before that time. This testimony corroborated rather than rebutted the contention of appellee that the disease commenced after November, 1926, inasmuch as three months and some weeks prior to April, 1927, allowing appellant all benefit of doubt, would bring the inception of the disease to some date in December, 1926, which was after the effective date of the policy.

The general agent of the appellant company, Lawrence L. Flinn, testified that he received notice either on the 3rd or 4th of May, 1927, that appellee had gone to the hospital, and that under appellee's policy num-

ber he notified the appellant company that Dr. Colby had undergone an operation; that nothing was done until Dr. Colby came home, when he requested an advance, and that at that time he sent the appellee a draft for $500; that he was requested by the company to take a statement from Dr. Colby respecting his condition, as no statement up to that time had been taken; that he presented a form claim blank to Dr. Colby, which he filled out; that he forwarded the claim affidavit to the company and wrote another draft for $500, which was forwarded to appellee.

There was a verdict and judgment in favor of appellee in the sum of $3,363.71, and appellant has appealed.

The principal legal question raised upon the appeal is, whether appellee's answer to questions in the application constituted warranties or representations; and if false, whether the applicant must have made such representations knowingly in order to defeat recovery. It is not admitted that any false representations were made. The application, with the policy, formed the contract. Counsel for appellant, by the special pleas, alleged the intentional misrepresentation by appellee in his application respecting his condition of health, and cites authorities to sustain the pleas, based only upon the theory that the answer to some question was not true. Counsel cite *United States Fidelity & Guaranty Co. v. First Nat. Bank of Dundee,* 233 Ill. 475. This was a case in equity for the cancellation of certain renewal certificates of a fidelity bond. While the question was not involved in that case, the court held: "The law is well settled, in its application to insurance contracts, that a misrepresentation of a material fact in reliance upon which a contract of insurance is issued will void the contract and it is not essential in equity that such a misrepresentation should be known to be false." And the court further

held: ''A material misrepresentation, whether made intentionally and knowingly or through mistake and in good faith, will avoid the policy.''

In *Blahofski v. Metropolitan Life Ins. Co.*, 237 Ill. App. 220, 225, this court held to the same rule, citing *United States Fidelity & Guaranty Co. v. First Nat. Bank of Dundee, supra.* Appellant cites *Hranicka v. Prudential Ins. Co.*, 235 Ill. App. 257, but in that case the court held. ''Two contentions are made for the defendant: First, that as a matter of law, the trial judge erred in instructing the jury that if they believed from the evidence that at the time of making the application any of the answers were false and were material to the risk and that the insured knew they were false or should have known it, plaintiff could not recover; and second, that the verdict is manifestly against the weight of the evidence.

''As to the instruction, this court held in *Joseph v. New York Life Ins. Co.*, 219 Ill. App. 452, that the only question in such a case is whether the answer was knowingly false. The apt cases are reviewed at large in that opinion. That case is here decisive, and the contention that the trial judge erred is not tenable.''

In *Joseph v. New York Life Ins. Co.*, 219 Ill. App. 452, 466, the court of the First District examined all the cases in this State and the United States and held: ''From a consideration of the authorities to which we have referred and of many others which we have examined, we think the law is that where it is sought to avoid a policy on the ground that the insured made false answers in his application, the question of the good faith of the applicant in making his answers (in the absence of an express provision that they are warranties) is always a material one, and as Mr. Justice Harlan said in the *Moulor* case: 'If it be said that an individual could not be afflicted with the diseases specified in the application without being cognizant of the fact, the answer is that the jury, in that case, would

have no serious difficulty in finding that he had failed to communicate to the company what he knew or should have known was material to the risk, . . . and the policy was, by its terms, null and void.'

"While there is some apparent conflict in the language used in the reported opinions, yet we think upon a careful analysis of each case it will be found that there is no real conflict; that the question in each case is whether the answers made by the applicant were knowingly false. Other authorities sustain this view. *Donahue v. Mutual Life Ins. Co.*, 37 N. Dak. 203; *Baer v. State Life Ins. Co.*, 256 Pa. 177; *Oplinger v. New York Life Ins. Co.*, 253 Pa. 328; *Sharrer v. Capital Life Ins. Co.*, 102 Kan. 650; *Reserve Loan Life Ins. Co. v. Isom*, 173 Pac. (Okla.) 841; *Mutual Life Ins. Co. v. Morgan*, 39 Okla. 205; *Guarraia v. Metropolitan Life Ins. Co.*, 90 N. J. L. 682; *Suravitz v. Prudential Ins. Co.*, 244 Pa. 582."

In the case at bar the application contains a clause as follows: "Do you understand that the foregoing statements are made to induce the issuance of the policy applied for, and do you agree that the falsity of any answer in this application for a policy shall bar the right to recover thereunder, if such answer is made with intent to deceive, or if it materially affects the acceptance of the risk or the hazard assumed by the company?" Answer, "Yes."

In *Weisguth v. Supreme Tribe Ben Hur*, 272 Ill. 541, it is said: "By the terms of the certificate plaintiff in error agreed to pay the beneficiary the sum of $1,000 on the death of the member prior to her sixtieth birthday, 'provided that said application for membership and said medical examination are absolutely and strictly true as written.'" In this case the court held: "It is insisted, as a matter of law, that the answers of the deceased to the questions propounded by the medical examiner were warranties and not mere representations, and therefore, some of them

having been found untrue, defendant in error is not entitled to recover. It is only in cases where the policy will admit of no other construction that a statement contained therein will be construed as a warranty. 'The doctrine of warranty, in the law of insurance, is one of great rigor and frequently operates very harshly upon the assured, and courts will never construe a statement as a warranty unless the language of the policy is so clear as to preclude any other construction.' *Spence v. Central Accident Ins. Co.,* 236 Ill. 444.'' And the court, citing *Continental Life Ins. Co. v. Rogers, post,* held:

"Under the holding in *Continental Life Ins. Co. v. Rogers,* 119 Ill. 474, the statements made in this application must be held to be representations and not warranties. In that case the policy provided that the answers, statements and declarations contained in or indorsed upon the application, which was made a part of the contract, were warranted by the assured to be true in all respects, and that if the policy was obtained by or through any fraud, misrepresentation or concealment it should be absolutely null and void. In passing upon the question whether that constituted a warranty or a mere representation we said: 'It is clear, the fraud, concealment and misrepresentation here contemplated can have no application to anything other than the answers to the questions in the application. If true and full answers there could be neither fraud, concealment nor misrepresentation, and if not full and true, upon the hypothesis they were warranties, the assured would incur a forfeiture of the policy whether there was any intentional misrepresentation or suppression of the truth or not. If the answers, however, are simply representations, as contradistinguished from warranties, in the technical sense of those terms, then such of the answers, not material to the risk, as were honestly made in the belief they were true would

not be binding upon the assured or present any obstacle to a recovery. It is clear, therefore, the only way in which to give that provision of the policy relating to fraud, concealment and misrepresentation any effect at all, is by treating the answers in the policy as mere representations and not warranties.' '' And the court further, citing *Fitch v. American Popular Life Ins. Co., post,* a New York case, held: ''The *Rogers* case cited and relied upon *Fitch v. American Popular Life Ins. Co.,* 59 N. Y. 557. In that case the policy provided that fraud or intentional misrepresentation vitiated the policy, and that the statements and declarations made in the application, and on the faith of which the policy was issued, were warranties and in all respects true, and that the applicant declared that the answers to the questions annexed, and the written statements in the statement, declaration or warranty, together with the statements made to the examining physician, were warranties correct and true, and that the policy was issued and accepted in entire, unconditional honesty and good faith and with the just intent of scrupulously fulfilling all the conditions and engagements of the contract. It was held that the answers and statements contained in the application were mere representations and not warranties, mainly upon the same ground as the basis of the holding in the *Rogers* case, *supra.*''

We do not find that the courts of this State have, in any manner, receded from what is said in *Weisguth v. Supreme Tribe Ben Hur, supra,* and it follows that the statements and answer to questions in the application in the case at bar constitute representations and not warranties, and what was said by this court in *Blahofski v. Metropolitan Life Ins. Co., supra,* if based upon the same set of facts, should be overruled. The only basis in the record for charging a false statement in the application on the part of appellee is that he

stated he had never had tuberculosis. There is no proof that this statement was false or that appellee had ever been tuberculous. On cross examination appellee stated that in 1918 some officer had stated to him that he had tuberculosis and he was discharged from the United States service. Appellee disputed the charge and applied the test in 1919 and found no tubercular infection. This application was not signed until 8 years later. This constitutes no proof as to the charge. What we have said covers appellant's assignments of error as to the instructions given for appellee.

Some contention is made by appellant that the policy was canceled by appellant which should defeat a portion of the recovery, but section 16 of the policy provides: ''The company may cancel this policy at any time by written notice delivered to the insured or mailed to his last address, as shown by the records of the company, together with cash or the company's check for the unearned portion of the premiums actually paid by the insured and such cancellation shall be without prejudice to any claim originating prior thereto.''

Appellant assigns error upon the refusal of the court to give certain instructions for appellant, among which was one marked ''L'' based upon appellee's failure, under the standard provisions of the policy, to give written notice of any injury or sickness. Clauses four and five of these provisions are in the following language: ''Written notice of injury or of sickness on which claim may be based must be given to the Company within twenty days after the date of the accident causing such injury, or within ten days after the commencement of disability from such sickness. In event of accidental death immediate notice thereof must be given to the Company.''

Clause 5: ''Such notice given by or in behalf of the insured or beneficiary, as the case may be, to the com-

pany at its home office, 226 W. Adams St., Chicago, Ills., or to any authorized agent of the company, with particulars sufficient to identify the Insured, shall be deemed to be notice to the company. Failure to give notice within the time provided in this policy shall not invalidate any claim if it shall be shown not to have been reasonably possible to give such notice and that notice was given as soon as was reasonably possible.''

Appellee went to the hospital on May 4, 1927. Appellant's authorized agent received notice of the sickness on the 3rd or 4th of May and notified the company, and as soon as appellee came out of the hospital appellant made two payments of $500 each upon the claim. This conduct was a waiver of any specific provision of said clauses three and four not carried out, and the instruction ''L'' should not have been given. We have examined the other refused instructions upon which appellant assigns error. Some were covered by other instructions, others were not supported by the testimony and there are some instructions offered by appellant that do not state the law correctly. None of the rulings of the court upon these instructions, in the opinion of this court, would warrant a reversal of the judgment. Finding no error in the record sufficient to warrant such reversal, the judgment of the circuit court of Sangamon county is affirmed.

*Affirmed.*